**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

|  |  |  |
|---|---|---|
| **HELEN RUSH**, individually, and on behalf of others similarly situated, | : : : : | Case No:  26-cv-633 |
| Plaintiff, | : : : | |
| v. | : : : | |
| **ELEVANCE HEALTH INC., f/k/a THE ANTHEM COMPANIES, INC.,** and **CARELON HEALTH, INC**., a corporation, | : : : : | |
| Defendants. | : | |

**COLLECTIVE AND CLASS ACTION**
**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Helen Rush ("Plaintiff") hereby brings this Collective/Class Action Complaint against Defendants, Elevance Health, Inc., formerly known as The Anthem Companies, Inc., ("Elevance") and Carelon Health, Inc. ("Carelon") (collectively, "Defendants") and states as follows:

**INTRODUCTION**

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), §§ 820 ILCS 105/1, *et seq.,* the Illinois Wage Payment and Collection Act ("IWPCA"), §§ ILCS 115/1, *et seq*., and common law.

2.      Defendant Elevance is a multi-line health insurance company that provides

1

managed care programs and related services. Defendant Carelon is a healthcare services and benefits management organization that provides integrated care for Medicare and Medicaid patients. To provide their services, Defendants employed (and continues to employ) numerous customer service representatives and other remote call workers—including Plaintiff and the individuals that make up the putative or potential class. While exact job titles may differ, the employees who worked as remote call workers were subjected to the same or similar illegal pay practices for similar work throughout the United States.

3.      Upon information and belief, in support of their over 100,000 employees, Defendants employ hundreds of people in call-center roles across the United States.

4.      Defendants used a number of titles, including, but not limited to, Referral Specialist I and II, and Appeals Specialist, to refer to agents that provide support to physicians, patients, and third-parties (collectively referred to herein as "Agents").

5.      Defendants classified their Agents as non-exempt and tasked them with the primary duty of providing over-the-phone customer service.

6.      Defendants employed Plaintiff Rush as an hourly remote call center employee with the job title of Referral Specialist.

7.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendants' hourly call center employees, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[1]

8.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last

---

[1] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited March 9, 2026).

principal activity of the workday." *Id*. at p. 2.

9.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

10.     Defendants violated the FLSA, state wage-and-hour law, and common law by systematically failing to compensate their Agents for work tasks completed before and after their scheduled shifts and during their unpaid meal periods, when they were not logged into Defendants' timekeeping system, which resulted in Agents not being paid for all hours worked, whether at the employee's base rate in non-overtime weeks, or overtime hours worked in weeks where Agents worked at least forty (40) hours.

11.     More specifically, Defendants failed to compensate Agents for the substantial time they spent performing activities such as turning on and booting up their computer prior to clocking into Defendant's timekeeping system.

12.     Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding them unpaid back wages, liquidated damages, attorneys' fees and costs to make them and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendants will not subject future workers to the same illegal conduct in the future.

13. At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendants at any time in the past three years.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

15. Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

16. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

17. Defendants' annual sales each exceed $500,000, and each Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendants' Agents engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

18. This Court has personal jurisdiction over Defendants because Defendants are headquartered in this District and employs individuals within the state of Indiana.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Defendants conduct business in this District.

## PARTIES

20. Plaintiff Helen Rush is a resident of Park Forest, Illinois and worked for Defendants

4

as a non-exempt Agent in Illinois from July 2022 through September 2024. Defendants compensated Plaintiff Rush through the payment of an hourly rate, most recently at $21.39 per hour. Plaintiff Rush signed a consent to join this collective action, which is attached as **Exhibit A**.

21.     Plaintiff's paystubs were issued by The Elevance Health Companies, Inc., which is noted on the same as an affiliate of Defendant Elevance.

22.     Additional Opt-In Plaintiffs were or are employed by Defendants as Agents during the past three years and their consent forms will also be filed in this case.

23.     The Anthem Companies, Inc. is a foreign limited liability company with its principal place of business located at 220 Virginia Ave., Indianapolis, Indiana, 46204. It is a wholly owned subsidiary of ATH Holding Company, LLC, which is in turn a wholly owned subsidiary of Anthem, Inc., a publicly held corporation.

24.     On or about June 28, 2022, Anthem, Inc. rebranded itself as Elevance Health, Inc.[2]

25.     Defendant Elevance Health, Inc. is a domestic insurance company, licensed to do business in the state of Indiana. Elevance may be served via its registered agent, CT Corporation System at 334 North Senate Avenue, Indianapolis, Indiana 46204. Its principal place of business is 220 Virginia Ave., Indianapolis, Indiana, 46204.

26.     Defendant Carelon is a domestic corporation with its principal place of business located at 220 Virginia Ave., Indianapolis, Indiana, 46204, United States. It is a wholly owned subsidiary of Defendant Elevance and generally considered to be Elevance's healthcare services division.[3] Carelon may be served on its registered agent, CT Corporation System at 334 North

---

[2] Anthem Announces Subsidiary Brands Under Elevance Health (Press Release) (June 15, 2022) https://www.elevancehealth.com/newsroom/anthem-announces-subsidiary-brands-under-elevance-health (last accessed March 17, 2026).
[3] Elevance Health, Inc.'s Annual Report, p. 4 (February 6, 2026)

Senate Avenue, Indianapolis, Indiana 46204.

## GENERAL ALLEGATIONS

27.     Prior to hiring prospective Agents, Defendants provided them with a written offer setting forth the job requirements and rate of pay.

28.     Defendants maintained documents demonstrating the promised hourly wage for each Agent including, but not limited to: offer letters, paystubs, and/or other payroll records.

29.     Plaintiff received an offer from Defendants to work as an Agent, and she accepted Defendants' offer with the understanding that the base hourly rate would be paid for all hours worked.

30.     Plaintiff performed under her respective agreement with Defendants by carrying out their job duties and responsibilities. More specifically, Plaintiff made and answered calls concerning provider and patient questions, acted as the first point of contact when providers wanted to report or file a claim or pre-authorization, mentored other Agents, and periodically called providers and patients to follow up. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

31.      Defendants paid their Agents at varying hourly rates.

32.     Defendants' Agents, including Plaintiff, typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week. While Defendants have access to all payroll records, Plaintiff do not, and there were one or more instances during Plaintiff's employment when they worked forty (40) hours or more in a workweek and less than forty (40)

---

https://d18rn0p25nwr6d.cloudfront.net/CIK-0001156039/6858e352-f3fd-432c-9300-518ba85cd10d.pdf (last accessed March 18, 2026); Our Companies | Elevance Health, https://www.elevancehealth.com/who-we-are/companies (last accessed March 18, 2026).

hours in a workweek.

33.    Defendants provided training to hourly employees, on, *inter alia*, how to carry out their day-to-day job duties; how to load and log into their computer programs at the beginning of the day; how to track their time in Defendants' timekeeping system; how attendance would be monitored; call quality expectations; and Defendants' numerous policies and procedures. The training that Defendants provided to all of their Agents was substantially the same.

34.    For purposes of compensation, Defendants' Agents clocked in and out for their shifts on their computers using Defendants' timekeeping application.

35.    At all relevant times, Defendants controlled Plaintiff and all other Agents' work schedules, duties, protocols, applications, assignments, and employment conditions.

36.    Defendants required Plaintiff and all other Agents to use high speed internet, a computer, and a variety of essential and indispensable computer programs, applications, and servers in order to perform their job duties.

37.    Defendants instructed Plaintiff and other similarly situated Agents to be "call ready" the moment their scheduled shifts started. This required Defendants' Agents to perform daily off-the-clock tasks prior to the start of their shifts and before they clocked into Defendants' timekeeping system. During the boot-up and login process, Defendants' Agents sometimes experienced technical difficulties or updates, increasing the amount of off-the-clock work they performed that day.

38.    Defendants' Agents necessarily had to perform off-the-clock work every shift because Defendants relied exclusively on a timekeeping system that was accessible only within the computer to track their Agents' hours, including Plaintiff's hours, worked. Therefore, Defendants' Agents were unable to clock in unless and until they performed off-the-clock work

7

before the start of their scheduled shifts and before they could access and log into (and therefore clock into) the program.

39.    Defendants enforced their "call ready" policy through their uniform compensation, attendance, and adherence procedures, and the call quality assurance system it used to monitor and grade Agents' calls. For example, Defendants routinely evaluated, and at times disciplined, Agents based on responsiveness, communication, availability, timeliness, attendance, adherence to deadlines, and work quality. Further, Defendants assessed and evaluated their Agents' handling of calls.

40.    Defendants' Agents used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Agents' work and Agents could not perform their jobs without them.

41.    Defendants' Agents also performed off-the-clock work when returning from lunch and preparing themselves to be call ready the moment their meal periods concluded.

42.    Similarly, Defendants' Agents, including Plaintiff, performed work off-the-clock at the end of their scheduled shift, after clocking out of Defendants' timekeeping system, when they shut-down/log out of the programs and applications that they utilized during their shifts.

43.    The pre-, mid-, and post-shift off-the-clock time Plaintiff and Defendants' Agents spent booting-up/logging into and shutting down their computer, applications and programs directly benefitted Defendants and was integral and indispensable to the Agents' job responsibilities.

44.    As a result of the pre-, mid-, and post-shift off-the-clock work described herein, Plaintiff and other Agents were unlawfully deprived of approximately eighteen (18) to twenty

(20) minutes of compensation every shift.

45.     At all relevant times, Defendants were able to track the amount of time Plaintiff and other Agents spent in connection with the pre-, mid-, and post-shift activities; however, Defendants failed to do so and failed to compensate them for the off-the-clock work they performed, thus breaching their agreements with Plaintiff and other Agents.

46.     Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendants to establish that it acted in good faith.

47.     Despite knowing Plaintiff and all other Agents performed this pre-, mid-, and post-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

48.     Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiff and similarly situated Agents booted-up and logged into their computer each shift, along with their clock-in and out times in the timekeeping system.

49.     Because Defendants required their Agents, including Plaintiff, to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendants' timekeeping system are inaccurate representations of the total amount of time Agents spent working for Defendants. Thus, the hours reflected on the Agents' paystubs are also inaccurate representations of the hours they actually worked.

### A.     Pre-Shift Off-the-Clock Work

50.     The off-the-clock pre-shift process took substantial time, approximately eight (8) to twelve (12) minutes per shift. Specifically, before each shift, Agents were required to undertake essential work tasks such as turning on or warming up their computer; waiting for the computer to turn on, and on occasion, download updates; logging into their computer with a username and

9

password; logging into Defendants' VPN; opening a browser; logging into Defendants' database/portal; logging into Defendants' timekeeping system; and clocking in.

51. Defendants' Agents had to complete this process while off-the-clock, before the start of their scheduled shifts and before fielding calls. Consequently, the Agents had to begin working at least eight (8) to twelve (12) minutes before their scheduled shifts to complete their start-up and log-in activities.

52. Defendants' Agents were not compensated for all of this time because Defendants prohibited and/or prevented Agents from clocking into their timekeeping software before they performed some, if not all, of the pre-shift off-the-clock work.

53. The pre-shift off-the-clock work Agents performed directly benefited Defendants, and was integral and indispensable to their job duties and responsibilities as Agents.

### B.    Meal-Period Off-the-Clock Work

54. Defendants promised their Agents one unpaid meal period during each eight (8) hour shift.

55. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

56.    Defendants did not provide Agents with legitimate bona fide meal periods because it required the Agents to return to their computer stations prior to the end of their unpaid meal periods to log back in and place themselves in a "ready" state so they could resume taking calls promptly at the end of their scheduled meal periods.

57.    If Agents were not logged back into the phone system and ready to take calls promptly at the conclusion of their scheduled meal periods, they were considered out of adherence and could be subjected to disciplinary action.

58.    The login process during meal periods was truncated because the Agents' computers were already on and many of the programs that they used during their scheduled shifts remained opened; however, Agents spent approximately five (5) minutes performing this off-the-clock work during their unpaid meal periods. Thus, Defendants maintained a common policy and practice pursuant to which it failed to pay Agents for no less than five (5) minutes of work performed during their meal periods.

59.    The off-the-clock work Plaintiff and other Agents performed during their meal periods was compensable, directly benefited Defendants, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Agents' job duties and responsibilities.

60.    Defendants' management knew or should have known that Plaintiff and other Agents performed this off-the-clock work, but permitted and even rewarded it through Defendants' schedule adherence metrics.

**C.    Post-Shift Off-the-Clock Work**

61.    Pursuant to Defendants' policies, training and direction, Plaintiff and similarly situated Agents were required to clock out as soon as their scheduled shift ended or the moment

they finished fielding their last call for the day and before shutting down their systems and computer. Plaintiff and other Agents were not allowed to begin the logout and shutdown process until they completed their last fielded call.

62.     This resulted in Plaintiff and other Agents performing an additional three (3) to five (5) minutes of off-the-clock work every shift.

63.     The post-shift off-the-clock work Plaintiff and other Agents performed was compensable, directly benefited Defendants and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Agents' job duties and responsibilities.

64.     Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

**D.     The Off-the-Clock Work Results in Viable "Gap Time" Claims**

65.     "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

66.     Plaintiff and all similarly situated Agents regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

67.     During the weeks that Agents did not work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices was a deprivation of straight-time wages, in breach of Defendants' agreements with them.

## NATIONWIDE COLLECTIVE ACTION ALLEGATIONS

68.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly Agents who worked for Defendants at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

69.    Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

70.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

71.    Consistent with Defendants' policies and practices, Plaintiff and the proposed FLSA Collective were not paid for all regular and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

72.    All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendants, and/or Defendants were aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

73.    Defendants were aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

74.    As part of their regular business practice, Defendants intentionally, willfully, and

repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

   a. Willfully failing to pay their employees, including Plaintiff and the FLSA Collective members, for all regular hours they worked off-the-clock in non-overtime workweeks;

   b. Willfully failing to pay their employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

   c. Willfully failing to record all of the time that their employees, including Plaintiff and the FLSA Collective members, worked for the benefit of Defendants.

75. Defendants' unlawful conduct was (and is) widespread, repeated, and consistent.

76. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

77. The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are: (1) required to work uncompensated boot up and log out time; and (2) entitled to their regular hourly wage in non-overtime workweeks, overtime gap time in applicable weeks, and overtime for hours worked over forty (40) in a week.

78. Plaintiff estimates that the FLSA Collective, including both current and former

Agents during the relevant period, includes at least hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendants' personnel and payroll records.

79.     The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

**RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

80.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former hourly Agents who worked for Defendants at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

81.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimate there are hundreds, if not thousands, of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

82.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

15

a. Whether Defendants failed to keep accurate time and payroll records for Plaintiff and the Rule 23 Nationwide Class;

b. Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

c. Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications and networks is compensable time under applicable law;

d. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract; and

e. Whether Defendants' non-payment of wages for all compensable time resulted in an unjust enrichment to Defendants.

83. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

84. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

85. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

86. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel

know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

87.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

88.     Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS

89.     Plaintiff brings Count Four of this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of herself and all other members of the class ("the Rule 23 Illinois Class") defined as:

> *All current and former Agents or persons with jobs performing substantially identical functions and/or duties to Agents employed by Defendants in the State of Illinois during the applicable statutory period.*

90.     The Rule 23 Illinois Class is so numerous that joinder of all class members is impracticable. Plaintiff Rush is unable to state at this time the exact size of the potential Rule 23 Illinois Class, but upon information and belief, avers that it consists of at least 100 persons. Rule 23 Illinois Class members should be easy to identify from Defendants' computer systems and electronic and personnel records.

91.     There is a well-defined community of interests among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class. These common legal and factual

17

questions, include, but are not limited to, the following:

   (a) whether Plaintiff and the Rule 23 Illinois Class members performed unpaid pre- and post-shift work activities, and if so, whether such work activities are compensable;

   (b) whether Defendants failed to pay Plaintiff and the Rule 23 Illinois Class minimum wages and time-and-a-half their regular rate of pay for hours worked in excess of 40 each workweek; and

   (c) whether Plaintiff and the Rule 23 Illinois Class members are owed wages for time spent performing pre- and post-shift work activities, and if so, the appropriate amount thereof.

92.   Plaintiff Rush's claims are typical of the claims of other members of the Rule 23 Illinois Class in that she and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff and the Rule 23 Illinois Class members' claims arise out of the same uniform course of conduct by Defendants, and are based on the same legal theories.

93.   Plaintiff will fairly and adequately protect the interests of the Rule 23 Illinois Class. Her interests are not antagonistic to, but rather are in unison with, the interests of the other Rule 23 Illinois Class members. The named Plaintiff's counsel has broad experience in handling class action wage-and-hour litigation and is fully qualified to prosecute the claims of the Rule 23 Illinois Class in this case.

94.   The questions of law or fact that are common to the Rule 23 Illinois Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Rule 23 Illinois Class, listed above, are common to the classes as a whole and predominate over any questions affecting only individual class members.

95.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Rule 23 Illinois Class members to pursue their claims

individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Rule 23 Illinois Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

96.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

97.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

98.    Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Illinois Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Illinois Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

99.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

100.    At all times relevant to this action, Defendants were subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

101.    At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

102.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

103.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

104.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

105.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

106.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

107.    The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

108.    At all times relevant to this action, Defendants engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre-, mid- and post-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

109.    The off-the-clock work performed every shift by Plaintiff and the proposed FLSA

Collective was an essential part of their jobs and these activities and the time associated with these activities was significant and not *de minimis*.

110. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff's and the FLSA Collective's regular hourly rate.

111. As a result of Defendants' unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

112. Defendants' violations of the FLSA were knowing and willful. Defendants could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

113. Plaintiff and all others similarly situated are entitled to back pay as well as liquidated damages in an amount equal to their back pay. As a result of Defendants' FLSA violations, Plaintiff and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendants are statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

114. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act,

an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### RULE 23 NATIONWIDE CLASS ACTION
### BREACH OF CONTRACT

115.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

116.    At all times relevant to this action, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendants.

117.    Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendants prepare as part of their regular business activities.

118.    Evidence of these contracts include Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for Agent work, which Plaintiff accepted and performed, but Defendants failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

119.    For example, Defendants offered to compensate Plaintiff Rush if she agreed to perform services for Defendants as an Agent. Plaintiff Rush accepted Defendants' respective offers and performed her duties as an Agent in reliance on the offers.

120.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $18.00-22.00 per hour within the applicable period.

121.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of

Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- mid- and post-shift work described herein.

122. By not paying Plaintiff and every other Rule 23 Nationwide Class member their fixed, pre-agreed upon hourly rate for *all* of the work they performed each shift in connection with the off-the-clock work described herein, Defendants systematically breached their contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

123. Defendants can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendants' payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

124. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

125. Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

126. As a direct and proximate result of Defendants' contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

<u>**COUNT III**</u>
**RULE 23 NATIONWIDE CLASS ACTION**

23

## UNJUST ENRICHMENT

127.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

128.    This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

129.    At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendants' benefit.

130.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

131.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

132.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

133.    Defendants received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom. Despite this, Defendants did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

134.    Upon information and belief, Defendants used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

135.    Defendants was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

136.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

137.    As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

**COUNT IV**
**RULE 23 ILLINOIS CLASS ACTION**
**VIOLATIONS OF THE ILLINOIS MINIMUM WAGE LAW ("IMWL"),**
**§§ 820 ILCS 105/1, *et seq*. AND ILLINIOS WAGE PAYMENT AND**
**COLLECTION ACT ("IWPCA"), §§ ILCS 115/1, *et seq*.**
**UNPAID WAGES (RULE 23 ILLINOIS CLASS)**

138.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

139.    This count arises from Defendants' violation of the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq*., and Illinois Wage Payment and Collection Act, §§ ILCS 115/1, *et seq*., for their failure to pay Plaintiff and the class she seeks to represent their straight time and overtime pay.

140.    At all relevant times to the action, Defendants were "employer[s]" within the meaning of the IMWL.

141.    At all relevant times, Defendants employed Plaintiff Rush the Rule 23 Illinois Class were "employees" within the meaning of the IMWL and therefore entitled to the IMWL's protections. *See* §§ 820 ILCS 105/3(c)-(d).

142.    The IMWL, §§ 820 ILCS 105/1, et. seq. requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay for hours worked in excess of forty

(40) per week. See §§ 820 ILCS 105/4; 820 ILCS 105/4a.

143.   820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." § 820 ILCS 105/12(a).

144.   The IWPCA "applies to all employers and employees in [Illinois], … but excepting employees of the State or Federal governments." *See* §§ 820 ILCS 115/1. Plaintiff and the Rule 23 Illinois Class were not employees of the State or Federal government, therefore, they are entitled to the protections of the IWPCA.

145.   Under 820 ILSC 115/4, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

146.   Under 820 ILSC 115/5, "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

147.   As discussed herein, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Illinois Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus any overtime pay required by applicable law, in consideration of the work duties Plaintiff Rush and the Rule 23 Illinois Class members performed on Defendants' behalf.

148.   For example, Defendants offered to compensate Plaintiff at a minimum of $21.00 per hour, plus any overtime pay required by applicable law, if she agreed to perform services for

Defendant, as an Agent. Plaintiff Rush accepted Defendants' offer and performed under the contract by fulfilling her duties as an Agent, which included, but was not limited to, the pre-, mid-, and post-shift work activities required of him, in reliance on the offer.

149.    Evidence of these contracts include Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for Agent work, which Plaintiff Rush and the Rule 23 Illinois Class accepted and performed, including the unpaid pre-, mid-, and post-shift work activities described herein, but Defendants failed to perform by paying Plaintiff and the Rule 23 Illinois Class the promised wages for all work.

150.    Upon information and belief, each Rule 23 Illinois Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $21.00 per hour within the applicable period, in addition to applicable overtime premiums.

151.    Plaintiff and every other Rule 23 Illinois Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-shift work described herein.

152.    Defendants breached their contractual promises by failing to pay Plaintiff and the Rule 23 Illinois Class for all wages (regular and overtime) owed.

153.    Plaintiff and the Rule 23 Illinois Class also did not receive accurate wage statements that detailed each hour worked and their rate of pay because Defendants failed to include the compensable time discussed herein in the paystubs provided to Plaintiff and the Rule 23 Illinois Class.

154.    Additionally, 820 ILCS 115/14(a) provides that an employee aggrieved by an employer's violation of the Illinois Wage Payment and Collection Act "shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

155.    Defendants willfully, knowingly and/or recklessly violated the IMWL and the IWPCA by regularly and repeatedly failing to compensate Plaintiff Rush and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint.

156.    As a result, Plaintiff and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, treble damages, costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

c.    An Order certifying this action as a class action (for the Rule 23 Illinois Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims under the IMWL and IWPCA (Count IV);

d.    An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, Rule 23 Nationwide Class members, and Rule 23 Illinois Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to

join and participate in this lawsuit;

e.    An Order designating the Plaintiff as representatives of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class Counsel for the same;

f.    An Order designating Plaintiff Rush as representative of the Rule 23 Illinois Class, and undersigned counsel as counsel for the same;

g.    An Order declaring that Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

h.    An Order declaring that Defendants' violations of the FLSA were willful;

i.    An Order declaring that Defendants breached their contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendants were unjustly enriched) by failing to pay them for mandatory pre-, mid-, and post-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

j.    An Order declaring that Defendants violated Illinois wage-and-hour law;

k.    An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff, the FLSA Collective, the Rule 23 Nationwide Class, and the Rule 23 Illinois Class the full amount of damages, liquidated damages, and punitive damages available by law;

l.    An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as provided by statute;

m.    An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

n.    An Order awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff Helen Rush individually and on behalf of all others similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

29

Dated: March 30, 2026

Respectfully Submitted,

_/s/ Julia A. Ozello_____
Mark R. Miller (IL 6283542)
Julia A. Ozello (IL 6336504)
**WALLACE MILLER**
200 W. Madison St., Suite 3400
Chicago, Illinois 60606
Telephone: 312-261-6193
mrm@wallacemiller.com
jo@wallacemiller.com

Jason J. Thompson (P47184)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
jthompson@sommerspc.com

*Attorneys for Plaintiff and the Putative*
*Class/Collective Action Members*